Good morning your honors, Lowell Sturgill from the United States, from the Department of Justice representing the United States. Mr. Picarello and I will be dividing our time this morning equally. I'd like to begin, Judge Rawlinson, by answering one of the questions you asked Mr. Treen. You asked him for his best language from the New Berlin case on the principle that this section of RLUIPA codifies free exercise law. I had the benefit of sitting in the back and being able to- Ask that question. Well, let me answer it anyway. Because I was flipping through my opinions in the back and let's, the citation is 396 F. 3rd 897. And there the court says verbatim that this section of RLUIPA codifies Sherbert v. Verner. My question was what language defined substantial? That was my, that was my inquiry. Where in the Supreme Court jurisprudence was substantial defined? Well, his answer that Sherbert is the best place to look is the answer to that. So, well, let me then just say that you have obviously heard at length about the end of this case, the identification issue, the section 5 issue. This case involves a second ground on which the plaintiffs trigger, sought to trigger that this individualized assessment is part of RLUIPA, that's the Commerce Clause. And you haven't heard about that because it's not involved in the other case. So I'd like to begin by discussing the Commerce Clause. The district court held here that the Congress did not have a statute that was valid with respect to the Commerce Clause. And that just cannot be, because as we've said in our brief, this section contains what's known as a jurisdictional element. A jurisdictional element, as the Supreme Court has explained to us, is a provision that says the statute only applies insofar as the Commerce power would provide Congress with authority to enact the statute. So you can see that by definition the statute has to be facially constitutional. The statute only by its own terms applies as far as the Commerce Clause allows it to apply. The district court missed this fundamental point, and you might ask for my best case on this, even if you didn't before, and I would cite you to United States v. Jones, 231F3-508. That was a Federal firearms statute, a statute that made it unlawful for a person who's subject to a domestic violence restraining order to possess in or affecting interstate commerce any firearm or ammunition. And this Court said that is a jurisdictional element. The statute only applies as far as Congress's Commerce Clause powers. Ginsburg. But we don't have to reach this issue if we find that Congress was acting appropriately under Section 5, right? That's correct. Okay. Therefore, I wouldn't spend a great deal of time on that. Well, you know, I will take that suggestion, but I have to say again that the statute is not a jurisdictional element. I'm speaking only for myself, I should say, before I ask a question. Thank you. Well, let me briefly then just say two things about it. One is the district court said that this is beyond Congress's commerce power because this statute regulates land-use law and not economic conduct. Well, again, the Court ignored the effect of the jurisdictional element. That element by itself shows that the statute is regulating land-use law. That's still some subject of debate. So I'm not sure you're getting very far by asking us to dive into that debate. I don't think there's any debate on the fact that a jurisdictional element is sufficient to render a statute within Congress's commerce authority. The Supreme Court said that in Lopez and Morrison. This Court said that in Jones and cited a number of other Ninth Circuit cases. Okay. Well, then you've made your point. Okay. I'm happy to move on. Well, you know, again, I'm just trying to address what the district court said. The district court. I understand your argument. All right. I'll move on. You have a limited amount of time. Section 5. Well, actually, there's really not much more to say about Section 5. Mr. Treene said it. The two points are that the statute codifies what the Free Exercise Clause already provides, and to the extent that there's some way in which the statute in a fashion Congress did not anticipate goes beyond the statute, it's clearly congruent and proportional to the widespread existence of discrimination against religious institutions that Congress found in the statute. And you've been through this. Perhaps I should just sit down and reserve my time for rebuttal. That might be wise. Thank you. I'm on the right case now, I think. Is the Elsinore Christian Church able, based on the evidence before the lower court, to purchase property anywhere else? The United States, unlike any other case, has not participated in this case on whether they approve a claim. So you may sit down. Thank you. You know what your first question is. I think I do. May it please the Court. My name is Anthony Piccarello from the Beckett Fund for Religious Liberty, and I represent Elsinore Christian College and Gary Holmes in this case. In answer to your question, Your Honor, essentially the city has succeeded in chasing this church out of the downtown area. They have looked for a long time, and as has been suggested, there's only so much time that courts will allow churches to look for particular properties before they deem the use to be – before they deem the burden imposed by the unavailability of that property attributable to the government to be substantial. And basically that's effectively what ended up happening. To be sure, this church started out downtown in what the city has acknowledged are functionally deficient quarters, and as a result of the denial of the special use permit in this particular case, was forced to kind of continue to languish there for a while and eventually had to leave. So to answer your question, effectively, yes. Effectively, they have not been able to find property within the downtown area. What do you mean, effectively? Well, at a minimum, I mean effectively impracticable within the meaning of the Seventh Circuit standard, which incidentally is not the law of this circuit. But the point is, even under the significantly great restriction or onus standard, the standard is not absolute onus or restriction. And so it doesn't – in order to show a substantial burden, in order to kind of flesh out, if you will, that general standard, one thing that it doesn't mean is the requirement of an absolute prohibition. One thing that it doesn't mean is, again, to have the ministry entirely squelched, to be sort of run out of the rail. Let me ask you this, counsel. How much weight should we give to the fact that the religious institution has a particular ministry, in this case, ministers to kind of the most unfortunate segment of society? How much does that weigh in the equation? And what's your best case authority to support your argument on this point? Well, Your Honor, it matters substantially in this regard, because it cannot be that the government could come along to a house of worship or any other kind of religious ministry and say, hey, you know what, why don't you go ahead and change your ministry? In this particular case, you have a particular church that has, as it were, a vocation to serve the downtown community. That's their raison d'etre. That's why they exist. That's why they're there. That's been their goal from the beginning, and it continues to be. In that regard, it's just, I mean, frankly, it runs to sort of a very high level of generality of baseline propositions of First Amendment law regarding the ability of government to interfere with questions of religious mission. I mean, I might be inclined to say that. There's a kind of a tension there, though, between the government's right to determine how land is to be used within its jurisdiction and the right of the church to expand or redefine or set its ministry. How are we supposed to juxtapose those two? Your Honor's correct that there is a tension there at the far distant limits, and I think that's one of the reasons why the substantial burden standard is important, because it's not just any old burden on religious exercises. It's a substantial one. So it's to respond to a question that Your Honor had before. The standard is not, not, even under the government's interpretation or our interpretation, that the denial of any permit by a religious adherent constitutes a substantial burden on religious exercise. I would point to this, to the Second Circuit's recent decision in Westchester Day School for an important distinction in that regard. There's a footnote in that case that emphasizes that this is not, and it cannot be interpreted as a matter of status. RLUIPA does not respect and protect religious status as such. Instead, what it protects is religious exercise, religious uses. And indeed, religious use is nothing other than zoning jargon for religious exercise that takes place on land. So basically, if there's a denial, and so the footnote in Westchester Day points out, in accordance with the legislative history, that the denial, even by a religious adherent or religious applicant, as it were, of some use of land that doesn't involve religious exercise at all. And the example that Congress gives and that is quoted back in that case is a commercial use. And one hears sometimes about sort of hysterical concerns about megachurches that might have, say, a McDonald's as a part of them or something like that. I mean, that is not religious exercise, the use of land for religious exercise. It's the easy case. It is. We have the harder cases. And, well, I would submit, Your Honor, that this case is not one of those difficult cases inasmuch as this does run to the question of the question. It's a lot more difficult than McDonald's. It is. Well, I wouldn't say a lot more difficult inasmuch as it runs to the question of the binary question whether or not they can do this ministry meaningfully at all. They kind of had a hobbled, they did it in a hobbled way and had to leave eventually under the circumstances. But the difficulty is the Court should not delve into what is a meaningful ministry. That's the difficulty for me. We are not equipped to determine what ministry is meaningful and what isn't. I mean, I think that's putting us perilously close to gauging religious exercise. And that's the difficulty for me with this case, is that I think you're asking us to determine at what point this religious institution can exercise a ministry that's meaningful. And that's the sticking point for me. I appreciate Your Honor's concern. The standard that the Supreme Court has emphasized in this regard, the inquiry that the courts must involve, is an inquiry regarding centrality. And that's actually an important point on the constitutionality inasmuch as the statute decides specifically, precisely because the Supreme Court has emphasized it, to exclude the centrality inquiry from the statute. Sometimes challenges to constitutionality suggest that that broadens the scope of the statute, but it does not. Instead, it reinforces exactly what the statute already says. However, there is – there are nonetheless ways to distinguish burdens that are on the one hand substantial from those that are insubstantial. And the Supreme Court itself is actually useful – has useful precedents in this  I appreciate Your Honor's, in particular, stab at this, so to speak, in the San Jose Christian College, which is, of course, the law of this – unquestionably, it's the law of this circuit. But it's an important principle. Again, it stands for some important propositions that is to say, first of all, short of an absolute prohibition, but it's still at a high level of generality. So the question becomes how to give that more content. One way is the way that Congress suggested specifically, and that is to look at the Supreme Court precedent itself, which in – It doesn't help us, though. The problem with the Supreme Court precedent, it's even more general. That's the problem. Your Honor is correct that it is not – not exactly a straight line, shall we say. In other words, the Supreme Court has formulated it in different ways at different times. For example, the language of centrality, which was ultimately repudiated, did come up in some of those earlier cases. So – but now, where it stands is centrality is out. So that's one fixed point. But there are other important points that matter, and I would direct this Court's attention actually specifically to the amicus brief of, I believe it's the American Jewish Congress and Pacific Union Conference of the Seventh-day Adventists, which articulates, sort of extracts from existing Supreme Court jurisprudence, particularly the cases Sherbert, Hobby, and Thomas, a tendency to – I'm sorry. I just blanked on the word. To interfere. Tendency – yes. And also a pressure to coerce. Tendency to inhibit. I'm sorry is the word.  But in any event, that's developed in the – So you think the definition of substantial burden should be having a tendency to inhibit? That's the standard that the Supreme Court has articulated. And it's one that this Court is in a position to sort of harmonize as consistent with its existing standard. Those are not inconsistent. I would emphasize that. May I interrupt you for just a second? Please, please. Do you agree with Judge Wilson, district court judge, that the fact that you cannot use this one piece of land, which is now the Food Smarts store, imposes a substantial burden upon you? Your Honor, we believe that the burden – We believe that this denial is a substantial burden under any available standard, including the one that Judge Wilson articulated. We would – Why is that? Is this a unique land? Can't you go somewhere else in Elsinore? No. I'm happy to explain why it is that I believe that it's consistent, that it violates even the additional standards, such as significant restriction or onus on the one hand, effectively impractical – which I would underscore again is not the law of the circuit. But nonetheless, as in San Jose Christian College, what this Court said was, well, those two standards, whether they're same, different, whatever, yield the same results. In this case, those two standards, if the Court chose to apply them both, it would yield the same results. I do think that Judge Wilson's standard is perhaps broader than it needs to be. I'm not saying that it's wrong. I think it's broader. I was going next to the question, why shouldn't we reverse and remand for Judge Wilson to make – take further evidence as to whether there is other space available in Elsinore and whether a similar space is not – is available. There are a series of reasons why that's so, Your Honor. The first is that a motion for full remand has already been put before this Court and rejected. The other is that a question – Say that again. A motion for full remand was put before this Court and rejected. Was that on a – was that a panel? Was this – was it this panel or was it a motions panel? I don't – I honestly don't know. It might have been a motions panel. That's what I'm thinking. And we can reconsider orders that have been entered by a motions panel, because that's a much more summary procedure than this. So if you could answer Judge Beyer's question, that might help us a little. Well, there are additional reasons. I mean, that question was also available when the petition was put to this Court for an electoral appeal on Crossfield, and it wasn't Crossfield. That's okay. But in any event, one reason why it should not be remanded is because, once again, on any available standard, the result is the same. We would also request that if – The result is the same whether there are a series of other lots around this one lot which are available, it's a blighted area, it's cheaper, you can move in there, you can have the same ministry, you can have the downtown people, you can have the old people. Except – well, the answer to that question is that it's already established in the record. It's undisputed in the record. The city has already admitted that there are not other vacant properties available. It's – I can even – In the downtown area. Correct. Correct. The citations are there. I'd be happy to find that in just a moment. Page – I think it's page 12 in our brief is where we cite in the record where that is the case. In other words, the facts – the facts are already fully developed and established. Wait. I'm sorry. Please, sure. We're trying to get a citation to the record, not to your brief. Okay. Okay. What we've designated as joint exhibit tab 13, paragraph 31, which is cited in case it is additionally useful on – at the top of page 12 of our brief. What does paragraph 31 say? There were no vacant – and this is quoting from the – from a document of the city. There were no vacant buildings in the downtown Lake Elsinore vicinity that were suitable or available for the church to occupy. No vacant buildings. That wasn't the question. The question is there vacant – is there property in the area, not whether or not there were vacant buildings. That's the other – the other fact in the record that by now establishes all that needs to be shown in order to establish a substantial burden and, moreover, wouldn't be changed on remand is that the church has been searching for an awfully long time. Again, as the Seventh Circuit has indicated, and again, consistent with this Court's ruling, in order for a burden to be substantial, it does not to be – does not need to be insuperable. Right. I understand that, counsel, but a specific question was asked. The question was is there available land downtown that the church could use to continue its ministry? And you said the city stipulated that there was no other location in the city. Now, are you sticking to that representation? I – I stick to what it is that we have quoted in the record. But that's vacant buildings. Correct. And consistent with – consistent with the city stipulation about absence of vacant buildings, there is also the further evidence, undisputed in the record, of the church's, indeed, relentless search for a – for a place downtown. And again, you know, how many years do they have to keep searching before – before a conclusion is to be reached? My question was just about the stipulation. I understand your point. I understand. I apologize, Your Honor. If I could take a few moments to comment on the existing standard. Regarding individualized assessments, there hasn't been any talk yet about this Court's decision in the Thornburg case. That case elaborated authoritatively and remains the law of the circuit on the meaning of individualized assessments, which – In the zoning context? No, but importantly, Your Honor, it's outside – outside the employment context, the employee benefits context, and emphasizes that there is a general principle at work here. Now, it cannot be the case that zoning laws are singularly exempt from that general principle. The Supreme Court has not said otherwise in City of Burney. It may be that in City of Burney, the particular zoning laws there were mutually and generally applicable, were in systems of individualized assessments, et cetera. That may be. But that is not, not remotely, a broad pronouncement about any and all zoning laws. Counsel, when zoning schemes are enacted, they're not enacted with any particular entity in mind. It's global. It's global and it applies generally to everyone. The zoning – the commissioners could not know when they enact the zoning scheme what applications are going to come. So it's a little, to me, it's a little confusing to me to say that it's not a law of general applicability because it's not pinpointed toward any particular applicant. Well, except that the exception from the general rule of Smith for systems of individualized assessments is not another way of talking about discrimination. To be sure, substantial burden claims, when they are triggered by a system of individualized assessments, are situations where there is both a high risk of discrimination as well as an easy ability to cloak discrimination. And again, Judge Posner has been especially helpful in clarifying this distinction in the Saints Constantine and Helen Church case. But what the Supreme Court has also made clear is that systems of individualized assessments, you know, don't need to be created for the purpose of targeting a particular use at the time that they're passed. They can be neutral in their face, but nonetheless be applied in a way, applied in a way that extends a benefit to uses other than religious uses, but withholds them from religious uses. So, for example, to take the example, what is the system of individualized assessments here? It's the application process. There is a general rule, as it were, across the board in a particular zone, no houses  And then certain of them are allowed pursuant to a conditional use process. Ginsburg. But what language in Thornburg are you relying on to support your argument? Let's see. The – there's a discussion of Thornburg, which I could read the relevant language out of the brief. I'm asking for the language in the case that you're relying upon to support your argument. I'm happy to do that. Your Honor, there are several bits of language that we rely on. What's your best one? My best bit. Yeah, your best bit. My best bit is, where the State has in place a system of individualized exemptions, it may not refuse to extend that system to cases of religious hardship without consideration. Okay. That's Smith. Well, that's actually Thornburg quoting Smith. Exactly. But that's the language from Smith. Well, actually, let me give you another chunk. Contrasting individualized assessment systems with others. Where are you reading? Let's see. Thornburg. Thornburg at 961. Contrasting situations where they excluded – where laws exclude entire objectively defined categories. Wait, wait, wait. I don't see that language. I'm sorry. Contrasting? It starts with the word contrast? No. I'm sorry. I'm asking for the exact language in Thornburg that you're relying upon. Open quote, excluded, and there's a parens around the D because that's inserted. Excluded entirely – I'm sorry, entire objectively defined categories of employees from the scope of the statute, and because the system involved no procedures whereby anyone implies for any of the exemptions. So what the Court – That's a contention. That's where the Court's discussing AFC's contention in the record. That's not a holding of the Court. There is – again, rather than recite the entire discussion in the brief, what we try to emphasize is that the basis in Thornburg for rejecting the claim there was that there was a highly discretionary case-by-case application-driven process, and that because that process was found, the Court applied that standard under the Free Exercise Clause in evaluating whether strict scrutiny should apply. It found that if you rejected it – But basically, the Court was quoting Smith in Thornburg. But there is – But you're back to Smith to support your argument that this is an individualized assessment. Well, there is – there is additional language, again, contrasting objectively defined. Yeah, but that's your language on the brief. I understand your point, but you're not quoting the case when you're reading that. You're quoting your brief. Well, I'm doing a little bit of both, and unfortunately, it's a little bit difficult to do on the fly. I would just rely on what's in the brief. Okay. I understand. I understand your argument. You've exceeded your time. All right. Thank you. Thank you, Your Honor. Good morning, Your Honor. Smith, Lisa Thornburg. My name is Paul Donsbach. I represent the city of Lake Elsinore. Mr. Maddow? I think Judge Rawlinson's point about possibility of remand is well taken. And if I may, I'd like to – That was Judge Baird's point. Pardon me. I don't want to take credit for a brilliant idea that wasn't mine. Pardon me, Judge Baird. And I think a little bit of the procedural history is very important in this case. A major distinction between this case and the County of Sutter case is that this is an interlocutory appeal from cross motions for summary judgment. And the appeal is limited to the constitutionality of Section 2 of RLUIPA. And subsequent to – I'm sorry? Section 2?  That's the land use provision of RLUIPA. To contrast it with Section 3, which is the institutionalized provision. Subsequent to this Court and the district court's certification of an interlocutory appeal, this Court decided the Morgan Hill case. And subsequent to that, the city of Lake Elsinore filed a motion for remand. And in that motion, we argued that because the Morgan Hill decision before this Court was, we believe, contrary to the district court, in this case's analysis of the substantial burden standard, that the most efficient course of action was to then remand the case and allow Judge Wilson to, we believe, properly apply the correct substantial burden standard. And that motion was summarily denied. There wasn't an explanation. I do believe that was a panel decision on the motion. And incidentally, it was opposed by Elsinore Christian Center and the United States, so it was a contested motion. But I agree. I do believe that this Court has the opportunity, if it chooses to do so, to remand this case on that basis. And if I could just clarify the law and then remand it. I'm a little reluctant to remand without trying to at least clarify the law a little more, because I'm not sure that Morgan Hill really did that, in retrospect. I agree. I think this Court could go in one of two ways. One would be a remand so that the correct standard would apply. Are you arguing perhaps that in Sherbert, where the lady applied for three jobs and was turned down and it was found to be a substantial burden for employment rights, and here, since they only applied for one zone, we ought to have three strikes before you have substantial burden? I wouldn't suggest such a simple test, Your Honor. Why not? It would be clear, wouldn't it? Bright line. And I think that goes to one of the problems with RLUIPA, and I'd like to get into that in a minute on the enforcement clause issue. But if I may, let me just close the loop on the remand issue. Our particular concern was Judge Wilson's opinion noted the district court Morgan Hill opinion, which was subsequently affirmed, and identified it as contrary authority to his conclusion. He felt that the district court in Morgan Hill had applied a pre-RLUIPA substantial burden standard, and under Judge Wilson's view, RLUIPA had completely overruled the substantial burden standard, and that was one of his concerns on constitutionality. And so under his view, the Morgan Hill standard, which later has now become the Ninth Circuit law, did not apply to our case. And he felt that under the RLUIPA substantial burden analysis, essentially anything, any unfavorable land use result that affects a religious entity is going to be deemed a substantial burden. And we believe that the Court's opinion in Morgan Hill takes a very different approach, and is much more protective of the ability of local officials to apply land use laws. So I think that is a viable course of action, is to remand this, allow Judge Wilson to apply the correct standard, and we may well have a different result, just depending on how we fashion the correct standard. Yeah. The problem with Morgan Hill and with the Supreme Court jurisprudence is that getting a handle on what constitutes a substantial burden is really difficult, I think, for the district courts, for us, and for the practitioners. And it would be helpful if we could fashion a definition of substantial burden that could help the district courts to decide these cases without having to do an ad hoc, individualized, you know, kind of ad hoc decision each time. So what would be your, if you had to look at the Supreme Court jurisprudence in the Supreme Court, how would you define it from Morgan Hill? Your Honor, if I may, I think this goes to the constitutional issue, and I think Your Honor's comments are echoed in the Supreme Court's Smith decision about the problem here. And this really goes not only to the Enforcement Clause issue, but to the Establishment Clause issue as well. And there's a very interesting discussion in Smith, and a dialogue between the majority opinion and the dissenting opinions. And in Smith, the majority laid down a bright-line standard. With respect to neutral laws of general applicability, we're going to apply rational basis review, regardless of any incidental effect on religious entities. On the other side of the line, if we have a law that has a good cause exemption, such as in the employment scheme, then for various reasons, we're going to apply strict scrutiny. And that is very clearly what the Court in Smith and then echoed in Hialeah laid down as a very clear bright-line rule. And there was a the dissent disagreed. The dissent in Smith felt that the strict scrutiny standards should apply any time a local government makes an individual assessment that puts a burden on a religious entity. And the majority opinion cautioned that if that were the law, then a whole range of State laws would be subject to a religious exemption. And the Smith opinion enumerated those and talked about child neglect, environmental protection, traffic laws, health and safety codes. And the majority opinion expressed the concern that all of these important State laws, if strict scrutiny applied, which is, I believe when counsel pointed out, is strict in theory and fatal in effect, now is going to essentially give an exemption to churches. And the dissent took issue and said that that was not giving judges credit for being able to distinguish when there's going to be a need for an exemption or not. And in response to that, and this is in footnote 5 of the Smith case, the majority opinion said, we recognize that judges do have the ability to look at these situations and carefully balance as best they can where we have a substantial burden, where we have an important State interest, and whether it's going to be a compelling interest. And we don't think that this, what they call the parade of horribles, is necessarily that we're going to end up with religious institutions being exempt from State laws. But the real parade of horribles, and this is again in footnote 5, is we are asking Federal judges, and I would add local officials, to make value judgments about what is a meaningful religious practice and make these very difficult decisions about what is a substantial burden on a religious entity in the land use context or under the free exercise clause. If you accepted the church's arguments in this case, strict scrutiny doesn't just apply under RLUIPA to the land use. Their argument is RLUIPA is constitutional because it merely codifies free exercise jurisprudence, which applies to health and safety codes and a whole manner of State laws. So under the church's position here, you have what we view as an excessive entanglement with religion, and you're asking not only Federal judges but local officials to undertake this extremely difficult analysis of what is going to place a burden on a church, what is an appropriate method of worship, in fact, because those exactly are the issues that local officials are going to have to grapple with under RLUIPA. Well, I don't think I heard the answer to Judge Rawlinson's question. What is the standard you're suggesting to determine substantial burden? We – the district court here, Judge Wilson, believes that RLUIPA overturned the standard, so I'm – I guess my answer would be – How would you define substantial burden in light of the Supreme Court jurisprudence, which RLUIPA specifically incorporated, and our President Morgan Hill? How would you shape a definition of substantial burden to assist the courts, the zoning officials, and applicants in knowing how to protect their respective interests or to decide the cases that come before them? I understand Your Honor's question. I'll do my best to answer it. I think the dilemma here is we have a pre-RLUIPA substantial burden standard and a RLUIPA substantial burden standard. As to the RLUIPA standard, I think we – if you assume the statute is constitutional, which we strongly disagree with, I think it's just a statutory interpretation. What did Congress mean? I thought it expressly incorporated – and that's the difficulty – it expressly incorporated the pre-RLUIPA jurisprudence on First Amendment exercise. As we've heard the Church argue just a few minutes ago, their view, and that was the view adopted by Judge Wilson, is that RLUIPA threw out the centrality aspect. If we assume that Congress did not intend to throw out the pre-RLUIPA pre-exercise jurisprudence, because that's what the statute says, that it incorporates that, okay, and disregarding for the moment the Church's argument on that and the district court judge's ruling on that, how do we reconcile the pre-RLUIPA First Amendment jurisprudence and incorporate that into a definition of substantial burden? I think that if the Court – and we would urge that interpretation – takes the pre-RLUIPA standard where there is only a substantial burden if it's affecting central religious beliefs. That's out. We know that's out, for sure. And certainly that's what Judge Wilson said. We would think that would be an appropriate standard, but I think we're starting to get in, or at least I'm starting to get into, how would we rewrite this legislation to make it better. No, we want you to define how we determine. To decide this case, we have to decide whether or not the zoning decision affected a substantial burden on the applicant. And, Your Honor, I think I have to disagree on that point. This is an interlocutory appeal limited to the constitutionality of RLUIPA. Oh, okay. Where the substantial burden comes in is that we think that one avenue for this Court to go is simply to remand it. Because we think there's been a change in law on what – how the Ninth Circuit interprets substantial burden under RLUIPA, and that's the Morgan Hill case. Right. But we can affirm on any basis, find the support in the record. We're not limited to the arguments that the parties make. So if we decide to address this argument on a different – if we decide to address this issue on a different basis than a district court, how would you help us out in terms of that issue? We would urge the Court to follow the Morgan Hill standard, which we think is a better interpretation of the substantial burden standard, and that if you're dealing in the land-use context, an unfavorable land-use decision would only be a substantial burden if it renders what the Church is trying to accomplish with the application impracticable, and that simply the existence of an unfavorable decision is not automatically a substantial burden. And is the determination of what is impracticable in your language a fact-based decision by the district court as to which we would have only abuse of discretion standard of review? I believe that's the case, Your Honor. Correct. And that, if I may, because of the limited time, I'd like to delve a little more into the constitutional issues, because I think that speaks to it, and that certainly speaks to the Establishment Clause issue that we believe is now entangling local practices and what are meaningful practices. And if I could, I'd like to lay out briefly the main issue here on, first, the Enforcement Clause, to touch on the Commerce Clause, and then conclude with the Establishment Clause. As I said, in the Smith case, the Supreme Court laid out a bright-line test, and rational basis review applies if there's a neutral, generally applicable law, such as land use, as in the City of Bern case, whereas strict scrutiny applies only to a State law that has a good cause exemption, such as employment. And the reason that RLUIPA is unconstitutional and exceeds Congress's powers under the Enforcement Clause is it overturns Smith. And what it does is it uses the term individual assessments in the statute, not individual exemptions. And this is really the key dispositive point on the constitutional issue. The Church contends, and this is in their briefs, and I believe they've repeated it today, as has the Department of Justice attorney. Their position is that there's no difference between an individual assessment and an individualized exemption. And they've said in their briefs, these two terms are interchangeable. And they do appear in Smith and, again, in Hialeah. But these are two entirely different things. And one only has to look to Smith to appreciate and understand the importance between a governmental assessment and a governmental good cause exemption, as in the unemployment cases. What, does zoning variance be an exemption? I don't believe so. And the courts have noted that the – and this is laid out in Smith. The only situation that's come up where there has been a recognized good cause exemption that triggers strict scrutiny is in the unemployment context, because the State in that situation is looking at a good cause exemption. And it has to go into the personal reasons why, for example, an individual refuses to work on Sunday. Well, isn't that true for a variance, too? A zoning variance? Your Honor, there may be situations where that's the case. It's always the case. Because if you're asking for a zoning variance, you're asking to be exempted from the general zoning laws that apply to the area that you're trying to affect in a land-use way. I don't believe that that is what the Court in Smith had in mind when they created strict scrutiny review for good cause exemptions. Why not? Because what they're looking at is a good cause scenario where a State official is looking into an individual's personal beliefs in determining whether they have good cause not to work on Saturday. This Church has a good faith belief stated that the word of God has to call them to this particular location. They did attempt to make that argument, and Judge Wilson felt that that was inconsistent with their other arguments, that they were the other properties might be suitable, and they were simply looking to this property because of the parking issues and other more prosaic things than divine intervention. I thought he held that there was a substantial burden on the Church. Was that the statute was unconstitutional? Am I incorrect? Your Honor, you're exactly correct. He felt that there was a substantial burden. Now, what you just said, there was no substantial burden if the Church couldn't fulfill its mission of ministering to the poor and the handicapped in a downtown urban setting. Didn't he find that to be a substantial burden? In this case, and we believe he applied the wrong substantial burden standard because when he made that decision, he contrasted it with what the rule was laid down in the district court Morgan Hill standard, which he said was a different standard and, in his view, had applied a pre-Rallupa substantial burden standard. Ultimately, that district court opinion in Morgan Hill was affirmed by this court, so we believe that is now the Ninth Circuit standard. So we think he applied the wrong standard. And our view is if this case is to be remanded, we believe that he will, following the correct standard, find that there is no substantial burden on Elsinore Christian Center because their position is not that there's no alternative location. They're just saying there's no vacant properties that are suitable to them. Well, obviously, it doesn't have to be vacant. I thought opposing counsel said that the city stipulated that there was no vacant buildings suitable for the church's use. Okay. Is that different than saying there is no locale? We believe so. That doesn't speak to the issue about alternative sites that may not presently be vacant. I would also point out that the district court opinion is now 2 years old. Or that may not have a building on them. I'm sorry? Or that may not have a building on the land. Correct. I'm not sure how to construe vacant in this context. And that's the party stipulation. But if we were to go back and remand, I think there might be an opportunity for each side to clarify what the facts are with respect to alternative sites. But the important distinction would be we would be, Judge Wilson would be making that analysis under the correct substantial burden standard. So that's one way for the Court to go. But we think alternatively the Court doesn't have to do that. We believe the statute is unconstitutional for the three reasons expressed. And if it is unconstitutional, we shouldn't even have to be dealing with the substantial burden standard. We think it clearly is. And simply a focus on Smith, we believe, shows that what RLUIPA has done by conflating assessments and exemptions has completely overturned Smith. And as previously mentioned, Congress under the Enforcement Clause has a small degree of latitude in going beyond what the existing free exercise jurisprudence requires, but it must be congruent and proportional. And here, where they're overturning Smith and now placing a whole host of State laws under the strict scrutiny standard, which was not the case under the free exercise jurisprudence, that is not congruent and proportional. I briefly did want to touch on the other arguments, because we think they are important, the Commerce Clause. What RLUIPA does, and it only takes a review of the terms of the statute itself, is it regulates State land use law. And that is set out right in the language of the statute. And we believe that that exceeds Congress's powers under the Commerce Clause. And our best authority for that, if you will, is Lopez and Morrison, where the Supreme Court struck down. Counsel, what about opposing counsel's argument that it cannot exceed the Commerce Clause power because there's a jurisdictional requirement expressly contained in the legislation? I'd be happy to address that. But there are two elements that the Court looks at in determining whether Congress has exceeded its Commerce Clause power. And the first is whether the activity is economic in nature. And the second is whether it substantially affects interstate commerce. Here, the activity is not economic. It's State law. That's not his point.  commerce, then you don't have to do that analysis by its very terms. It incorporates the interstate commerce hook, if you will. It doesn't cure the defect in the statute because the jurisdictional element only relates to the second necessary element under the Commerce Clause analysis, the first being, is this even an economic activity? And if the answer is no, then the jurisdictional element is not going to save you because that simply goes to the second part of the analysis, which is whether there's an effect on interstate commerce. So that's what the jurisdictional element does, is it requires the Court on a case-by-case basis to look at that second prong. Opposing counsel said there's no debate on that. It can't be debated. Well, we debate it. And so in our view, it's very clear that what Congress is doing is regulating State land use law itself. And if it could do that, then it could do all of the things or many of the things that the Supreme Court in Smith said were impermissible, that we should not have Congress regulating State criminal laws, State environmental protection laws, and similar types of laws. So we think that clearly would go beyond the Commerce Clause power. Okay. You've exceeded your time, counsel. Thank you very much for your argument. Thank you. We'll give one minute for rebuttal. First, this case does not violate the Establishment Clause by requiring this Court to become entangled with religion. It requires the Court to do nothing more than it already has to do under the Sherbert and Lukumi line of cases under the Free Exercise Clause. You're already in this vote. The statute doesn't change it. It just applies to the zoning context. Second, assessments and exceptions, there's no difference there. The real question is whether the statute gives standardless discretion that invites consideration of religious reasons. That's what's at issue, and that's what the doctrine is all about. Third, the Lukumi case applied that standard outside the unemployment compensation context. One of the statutes in Lukumi banned animal killing unless it was deemed necessary. The Court held that that was a system of individualized assessments and required strict scrutiny. So it's not just about unemployment compensation. Finally, Judge Rollins, can you ask about the language of a generally applicable system on the one hand and individualized assessments on the other and kind of how they go together? The way I read the case is it's basically definitional in a sense. The Supreme Court in Smith said if you have a system of individualized assessments, it is by definition not a system of general applicability. And my time is up. Thank you very much. All right. Thank you. Thank you to both counsel for helpful arguments. No, no. The case just argued and submitted, and this Court is in recess. Thank you.
judges: D.W. Nelson, Rawlinson, Bea